IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GREGORY A. HALL,

    Plaintiff,                      No. CIV S-03-1595 DFL KJM P

    vs.

EDWARD S. ALAMEIDA, et al.,

    Defendants.               FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is a former state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Defendants Alameida, Runnels, McDonald, Cook, Minnick and Norguard have moved for summary judgment.

I. Procedural History

        In the third amended complaint, plaintiff alleges that defendants Fleming, Iannone, McCoy and Harden beat him up and wrote a false report about the incident. Thereafter, defendant Abamonga refused to give him medical treatment as he lay on the ground, bleeding from the face, and then falsified the medical reports. Third Am. Compl. (Compl.) at 4.

        Defendant Hitchcock allegedly used unnecessary force on plaintiff's arm. Id. Defendant Rush tampered with plaintiff's food. Id.

/////

1

Finally, plaintiff alleges defendants Alameida, Runnels, McDonald, Minnick, Norguard and Cook implemented a racist policy, set forth in a California Department of Corrections (CDC) memorandum, by ordering African American inmates to be locked down following a melee with skinheads and Nazis, and then requiring African Americans to participate in anger management classes before being released from the lock-down, even though not all African Americans had been involved; other racial groups were not required to participate in the classes.  Compl. at 1.

All the defendants originally named in the third amended complaint filed a motion to dismiss under Federal Rule of Civil Procedure 12(b), alleging that plaintiff had failed to exhaust his administrative remedies.  On September 19, 2005, the district court adopted findings and recommendations and granted the motion to dismiss as to Fleming, Iannone, McCoy, Harden, Abamonga, Hitchcock and Rush, but denied it as to Alameida, Runnels, McDonald, Minnick, Norguard and Cook.

II. <u>Summary Judgment Standards Under Rule 56</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On May 10, 2004, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

III. Statement Of Facts

On June 17, 2003, white inmates at High Desert State Prison (HDSP) attacked black inmates; the attack escalated into a riot. Motion for Summary Judgment (MSJ), Declaration of M. McDonald (McDonald Decl. I) ¶ 4. Twenty-three inmates required medical attention and eighteen inmate-made weapons were discoverd. Id. As a result, a lockdown of C Facility, the locus of the riot, was ordered. Id. ¶ 9. A lockdown is the usual response to a serious prison incident and is ordered "without regard for ethnicity or whether the inmate was involved in the incident," so that the tensions leading to the incident can be defused. Id. ¶¶ 5-6. The Facility Captain recommends a lockdown to the warden, who approves or rejects the recommendation. Reply, Declaration of M. McDonald (McDonald Decl. II) ¶ 7. Thereafter, the

warden determines when it is safe to unlock and return to normal programming. Id. In this case, during the lockdown, inmates were not permitted outdoor exercise "because the risk of violence and injury was too great to permit it." McDonald Decl. II ¶ 19. In addition, it was not prudent to allow inmates to mingle on the yards before those responsible for the riot were identified. Id. ¶ 18.

Plaintiff arrived at HDSP on July 1, 2003, and was assigned to C Facility, Yard 1, which was on lockdown. MSJ, Declaration of H. Wagner (Wagner Decl.) ¶ 11. On July 8, S.R. Cook, the captain of Facility C, prepared a memo recommending that "Facility C Black and White inmate population on yards # 1 and #2 will be required to participate in the Anger Management Program before an unlock is requested." Id., Ex. A. The program was scheduled to last twelve weeks. Id.

Plaintiff did not attend anger management classes; no one did, "because people protested." Deposition of Gregory Hall (Hall Depo.) at 30-31. The requirement that inmates complete anger management was not implemented. Wagner Decl. ¶ 14.

The incremental unlock program for Facility C began with Yard 2, and concluded on September 3, 2003 with Yard 1 inmates. McDonald Decl. I ¶¶ 12-15. Inmates are released from lock down status gradually, perhaps over a period of three weeks to three months, and with gradually increasing numbers of inmates, to avoid reprisals. Id. ¶¶ 7-8; McDonald Decl. II ¶ 11. Nevertheless, on September 6 black inmates attacked white inmates. McDonald Decl. I ¶ 16.

IV. Standing, Injury And Equal Protection

A federal court will not entertain an action that does not present an actual case or controversy. City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983). Standing is one part of the case or controversy requirement of Article III, section 2 of the Constitution. Carroll v. Nakatani, 342 F.3d 934, 940 (9th Cir. 2003). The Supreme Court has defined the three elements of standing:

/////

> First, the plaintiff must have suffered an injury in fact–an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

United States v. Hays, 515 U.S. 737, 742-43 (1995) (internal quotations omitted); see also Allen v. Wright, 468 U.S. 737, 750-51 (1984). When evaluating a party's standing in the equal protection context, a court must determine if the person has been "personally denied equal treatment by the challenged discriminatory conduct." Hays, 515 U.S. at 743-44 (internal citations omitted). As the Ninth Circuit has recognized, "[b]eing subjected to a racial classification differs materially from having personally been denied equal treatment;" accordingly, the "standing doctrine requires us to ask . . . [w]as this person hurt by the claimed wrongs?" Carroll, 342 F.3d at 946-47.

Defendants have shown and plaintiff has admitted that neither he personally nor any other African-American inmate, whether or not involved in the disturbance on C Facility, was required to attend anger management classes as a prerequisite for being released from lockdown. Accordingly, plaintiff cannot show he was "hurt by the claimed wrongs" or "personally denied equal treatment."

V. <u>Denial Of Exercise And Due Process</u>

In his opposition to the motion for summary judgment, plaintiff notes that he was deprived of exercise for ninety days and was put on lockdown without due process. These allegations are also part of plaintiff's third amended complaint, but were not tied to any particular defendant: "We're getting no exercise outside our cells in months" and "I've been locked in my cell for <u>over ninety days</u> without due process, nor have I've [sic] given any exercise outside my cell. . . ." Compl. at 2, 4. On page four of the complaint, these claims are in a paragraph complaining about defendant Runnels, but also describing an assault by Correctional Officers Iannone, Fleming, McCoy and Harden. Compl. at 4. However, because the deprivation of

exercise and due process appear to be by-products of the lock-down, the court construes it as a claim against defendant Runnels.

In <u>Hayward v. Procunier</u>, 629 F.2d 599, 600 (9th Cir. 1980), the Ninth Circuit considered lockdowns, due process and exercise in the context of an institution-wide lockdown of San Quentin following the deaths of two inmates in gang-related incidents. Although the lockdown lasted five months, some outdoor exercise was restored after a month. <u>Id</u>.

Several inmates filed suit, claiming that they had a right to procedural due process in connection with the lockdown determination. The court rejected the claim, noting that there was no constitutional right to determine "whether the degree of emergency justifies a continuation of the lockdown," because such a determination involved "a high degree of policy and prediction." <u>Id</u>. at 602. Plaintiff's due process claim fails.

The <u>Hayward</u> court also considered the restrictions on outdoor exercise imposed as a result of the lockdown and found that a restriction on outdoor exercise imposed in response to a "genuine emergency" did not violate the Eighth Amendment. <u>Id</u>. at 603. The court noted, however, that some outdoor exercise was restored after a month. <u>Id</u>.

In this case, plaintiff arrived at HDSP on July 1 and was placed on Yard 1 of C Facility, which was on lockdown. Wagner Decl. ¶ 11. By September 3, Yard 1 was restored to regular exercise and programming. <u>Id</u>. ¶ 18. Defendant argues that the continued threat of violence and the slow pace of the investigation justified the denial of exercise. McDonald Decl. II ¶¶ 15-18; see <u>LeMaire v. Maass</u>, 12 F.3d 1444, 1458 (9th Cir. 1993) (lengthy denial of exercise for particular inmate justified by his violent behavior). Although it seems clear that blacks and whites could not safely be released for exercise at the same time, defendant does not explain why the two groups could not have been released at different times or why inmates like plaintiff, who had not been involved in the riot, could not have been allowed on the yard for exercise. Accordingly, defendant has not shown that "disciplinary needs" made outdoor exercise for plaintiff "impossible." <u>Spain v. Procunier</u>, 600 F.2d 189, 199-200 (9th Cir. 1979) (security

concerns explained why plaintiff could not mingle with some but did not explain why other arrangements were not made). Accordingly, there is a genuine issue of material fact on the question of whether plaintiff's Eighth Amendment rights were violated by the complete denial of outside exercise for sixty or ninety days. Compare Hayward, 629 F.2d at 603.

Defendant argues he is entitled to qualified immunity, because there is "no clearly established right to outdoor exercise when it is imposed as a result of race rioting and investigations are ongoing to prevent further incidents of violence." Reply at 6.

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a governmental officer is immune from suit based on the doctrine of qualified immunity, the court must answer two questions. The first is, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? Saucier v. Katz, 533 U.S. 194, 201 (2001). A negative answer ends the analysis, with qualified immunity protecting defendant from liability. Id. If a constitutional violation occurred, a court must further inquire "whether the right was clearly established." Id. "If the law did not put the [defendant] on notice that [his] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. at 202. The reasonableness of a defendant's conduct is judged "against the backdrop of the law at the time of the conduct." Brosseau v. Haugen, 543 U.S. 194, 198 (2004).

In Brosseau, the Supreme Court emphasized that "the qualified immunity inquiry must be undertaken in light of the specific context of the case." Id. In that case, the defendant police officer had shot a fleeing felon in the back. Id. at 194-96. The Court found that case law clearly established that in a case involving excessive force "where the officer has probable cause to believe that the suspect poses a threat of serious physical harm," the outcome depends very much on the specific facts of each case. Id. at 197-98, 201. Therefore, the Court held that

because the officer's actions fell "in the 'hazy border between excessive and acceptable force,'" the officer was entitled to qualified immunity. Id. at 201. (internal citation omitted).

In the Ninth Circuit, it is acceptable to deny inmates outdoor exercise for up to a month following a "true emergency." Hayward, 629 F.2d at 600. However, it is not acceptable to fail to consider methods of securing outdoor exercise for even the most dangerous inmates who have been in disciplinary confinement for over four years. Spain, 600 F.2d at 199-200; but see LeMaire, 12 F.3d at 1458 (no constitutional violation when inmate denied outdoor exercise as a result of his own misconduct; he attacked guards during exercise periods and vowed to do so again). Finally, it may not be acceptable to deny outdoor exercise for six weeks to an inmate confined in segregation as a result of various disciplinary violations. Allen v. Sakai, 40 F.3d 1001, 1004, amended on denial of rehearing, 48 F.3d 1082 (9th Cir. 1994) (defendants not entitled to qualified immunity).

This case is closer to Allen than to Hayward. Defendant does not explain why the undisputed need for security made it impossible for him to permit inmates with no involvement in the riot, including plaintiff, outside for exercise. On this record, defendant is not entitled to qualified immunity.

IT IS HEREBY RECOMMENDED that:

1. The motion for summary judgment by defendants Alameida, McDonald, Cook, Minnick and Norguard be granted.

2. Defendant Runnels' motion for summary judgment be granted insofar as plaintiff alleges he was denied due process and equal protection but denied insofar as plaintiff alleges he was denied outdoor exercise.

/////
/////
/////
/////

1  These findings and recommendations are submitted to the United States District
2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
3  days after being served with these findings and recommendations, any party may file written
4  objections with the court and serve a copy on all parties.  Such a document should be captioned
5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
6  shall be served and filed within ten days after service of the objections.  The parties are advised
7  that failure to file objections within the specified time may waive the right to appeal the District
8  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
9  DATED: June 27, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

2/hall1595.57(b)